UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

COMMODITY FUTURES TRADING
COMMISSION,

          Plaintiff,

    v.

Uduakobong Udo Inyangudo a/k/a Alexander Uti Bassey, Vanessa B. Okocha, Amen M. Okundaye, Charles A. Ochi, Diego I. Okeh, Daniell N. Liggins, Victor O. Edeh, and Tochukwu Edeh,

          Defendants.

Case No. 1:21-cv-11615

ECF Case

## ORDER FOR FINAL JUDGMENT BY DEFAULT, PERMANENT INJUNCTION, CIVIL MONETARY PENALTY, AND OTHER STATUTORY AND EQUITABLE RELIEF AGAINST DEFENDANTS DANIELL N. LIGGINS AND VICTOR O. EDEH

### I. Introduction

1. On September 30, 2021, the Commodity Futures Trading Commission ("Commission" or "Plaintiff") filed its Complaint for Injunctive and Other Equitable Relief, Restitution, and Civil Monetary Penalties and Other Equitable Relief, Under the Commodity Exchange Act and Commission Regulations against Defendants Uduakobong Udo Inyangudo a/k/a Alexander Uti Bassey, Vanessa B. Okocha, Amen M. Okundaye, Uduakobong Udo Inyangudo a/k/a Alexander Uti Bassey, Vanessa B. Okocha, Daniell N. Liggins ("Liggins"), Victor O. Edeh ("V. Edeh"), and Tochukwu Edeh, alleging that they violated the Commodity Exchange Act ("Act") and Commission Regulations ("Regulations"). ECF 1.

2. Plaintiff has filed a Motion for Entry Default Judgment Against Daniell N. Liggins for violating the Act and Regulations, specifically 7 U.S.C. §§ 6b(a)(2)(A), (C) and 9(1)

(2018), and 17 C.F.R. § 180.1(a) (2020) ("Motion").

3. Plaintiff served the summons and complaint upon Liggins on January 13, 2022 and upon V. Edeh on January 26, 2024. Liggins' Answer or motion under Rule 12 of the Federal Rules of Civil Procedure ("Rule") was due on or before February 3, 2022. V. Edeh's Answer or motion was due on or before February 16, 2024. Neither Liggins nor V. Edeh have answered or otherwise responded to the Complaint, and the times for them to respond were not extended.

4. On February 29, 2024, the Commission filed an Application for Entry of Default of Liggins and V. Edeh. ECF 50. On March 1, 2024, the Court granted the Commission's Application and the Clerk of the Court entered defaults as to Liggins and V. Edeh. ECF 51-52.

5. Therefore, the Court having carefully considered the Complaint, the allegations of which are well-pleaded and hereby taken as true, the Commission's Motion, the record in this case, and being otherwise fully advised in the premises, it is hereby:

**ORDERED** that Plaintiff's Motion is **GRANTED**. Accordingly, as to Liggins and V. Edeh, the Court enters findings of fact, conclusions of law, and an Order of Final Judgment by Default for Permanent Injunctions, Civil Monetary Penalties, and Other Statutory and Equitable Relief ("Order") pursuant to 7 U.S.C. § 13a-1, as set forth herein.

## II. FINDINGS OF FACT

### A. Parties

6. The U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with the administration and enforcement of the Act, 7 U.S.C. §§ 1, et seq. and the Regulation, 17 C.F.R. §§ 1.1, et seq. The Commission maintains its principal office at Three Lafayette Centre, 1155 21st Street, N.W., Washington, D.C. 20581.

2

7. Daniell N. Liggins a/k/a Danielle Liggins was, during the Relevant Period, a resident of Dallas/Fort Worth, Texas. Liggins has never been registered with the Commission in any capacity.

8. Victor O. Edeh resided in Waltham, Massachusetts during the Relevant Period. V. Edeh has never been registered with the Commission in any capacity.

**B.  Facts**

    **1.  Summary**

9. Since at least June 2016 through at least February 2019 ("Relevant Period"), all defendants in this case, acting through, or in conjunction with, the web-based entity primefx.org a/k/a Prime FX Managed System a/k/a PrimeFX Managed System Ltd. a/k/a Global Prime a/k/a Global Prime FX ("Prime FX"), fraudulently solicited and misappropriated funds from U.S. and international customers, as part of a coordinated scheme, for purported trading in foreign currency ("Forex") and Bitcoin. During the Relevant Period, all defendants engaged in coordinated efforts to obtain and misappropriate more than $1.2 million from at least 106 customers ("Prime FX Customers") through fraudulent solicitations.

10. All defendants used misappropriated funds for living expenses, travel, and entertainment, among other things. All defendants also distributed these funds amongst one-another as part of a joint, fraudulent enterprise. As a result, Prime FX Customers have lost most, if not all, of their funds due to all Defendants' fraud and misappropriation. Liggins and V. Edeh misappropriated some Prime FX Customer funds, as discussed further below.

    **2.  Prime FX Solicitations**

11. Prime FX was once a registered corporation in the United Kingdom. PrimeFX Managed System Ltd. was registered as a company in the UK in September 2018 and dissolved

3

in February 2020. But Prime FX was never formally established as any type of business entity in the United States. Instead, Prime FX operated as a website with a domain registered at a New York address, primefx.org, that made false and misleading representations regarding trading Forex and Bitcoin. Emails from care@primefx.org, directed customers to deposit their funds into the personal bank accounts of all defendants. Liggins and V. Edeh engaged in conduct that resulted in misappropriations of some Prime FX Customer funds.

12. During the Relevant Period, Prime FX operated primarily as a website, primefx.org, that offered trading in Forex and Bitcoin in managed accounts via online programs. The website was supplemented with a sales brochure that was distributed to prospective customers through email communications and social media.

13. During the Relevant Period, Prime FX falsely represented to the public in its solicitation materials that it has been in existence since 2012. The solicitation materials further identified Prime FX as having physical locations in Cyprus, Hong Kong, Australia, England, and Houston, Texas. Both the Prime FX website and brochure touted that the investments offered were regulated by CySEC – the Cypress Securities and Exchange Commission and even listed a CySEC license number. The license number did not belong to Prime FX, and the claim of oversight by CySEC was false, as was the existence of any of the claimed physical locations across the globe.

14. The Prime FX Customers, from multiple countries, including the United States, were solicited via the website, through social media, and directly by email, the latter of which involved the transmission of the solicitation brochure (collectively "solicitation materials"). An individual using an alias was the primary social media contact. Multiple other aliases were employed by Prime FX for solicitation of customers via social media and email. Other Prime FX

4

Customers were brought on via referrals from existing customers – who were paid a referral fee.

15.     During the Relevant Period, the care@primefx.org email account was a key element in the deception of Prime FX Customers and potential customers, as well as a primary tool used in the misappropriation of customer funds.

16.     Prime FX Customers used the primefx.org website to log on and view their accounts, their account balances, and transactions purportedly made in their accounts. Nothing posted on the website was accurate, as no such trades were ever made, nor profits actually earned. The Prime FX website existed primarily to solicit prospective customers under false pretenses to deposit funds and to have current customers send additional funds, by, among other things, posting false and misleading information about their returns. The primefx.org website made a variety of false and misleading claims. The Prime FX brochure emailed to customers and prospective customers also made a variety of false and misleading statements.

17.     Prime FX customers relied upon the representations of trading and profit made on the Prime FX website and in the solicitation materials distributed via the email, care@primefx.org. The Prime FX customers' reliance is evidenced by the fact that they sent Prime FX money after receiving email from care@primefx.org directing them to send their funds to third parties, and not business accounts in the name of Prime FX.

18.     Prime FX also used a variety of false statement on social media to ensnare and deceive customers and potential customers. Prime FX Customers relied upon these social media exchanges and posts to the extent that they conveyed the existence of successful trades of customer funds made by Prime FX.

19.     Prime FX solicitation materials also represented to customers and potential customers that the "original structure" of Prime FX had "founding fund managers and active

5

investors of Prime FX…operating under their own individual operations, including a variety of private funds." As set forth in greater detail below, this "disclosure" of the Prime FX structure proved to be an explanation why Prime FX directed prospective customers to transmit their funds to third-party individuals (*e.g.*. all defendants) for trading.

### 3. Liggins and V. Edeh Misappropriated Prime FX Customers' Funds

20. During the Relevant Period, all defendants and other Prime FX agents received in excess of $1.2 million from at least 106 Prime FX Customers and they misappropriated most of these funds.

21. Instructions provided to prospective and existing Prime FX Customers directed that the customer initiate all deposits through Prime FX. This meant that the customer would have to access the Prime FX website to request payment details. Those details were then sent from the email care@primefx.org. The emails sent via care@primefx.org to Prime FX Customers and prospective customers directed them to transmit their funds to a third-party individual, rather than to a business bank account in the name of Prime FX. These emails from care@primefx.org began the misappropriation process.

22. When Prime FX Customers and prospective customers inquired as to why their funds were sent to third-party individuals, as opposed to a bank account in the name of Prime FX Managed System, they were referred to the Prime FX "structure" whereby individual, "founding fund managers and active investors operated under their own individual operations." Alternatively, Prime FX Customers and prospective customers were also told that they were transmitting their funds directly to the traders, who would then put them in Prime FX accounts for trading.

23. The emails sent from care@primefx.org to the Prime FX Customers and prospective customers, with the names of third-party individuals and their corresponding banking information, referred to the third-parties as "exchangers." Instructions given to the Prime FX Customers were to "Fill in Exchanger/beneficiary details correctly for wires to pull through successfully. Exchangers convey the funds to trading accounts."

24. The representations made to the Prime FX customers and prospective customers regarding their deposit transmittals were false. The third-parties that received the trading deposits were not "founding fund managers" or "independent investors," but rather the defendants in this case who carried out the Prime FX misappropriation scheme.

   4. **Liggins' Misappropriations**

25. Liggins was one of the third-party recipients of Prime FX customer and prospective customer funds. Liggins received Prime FX Customer deposits for trading and transferred/dissipated Prime FX Customer funds in an effort to misappropriate their funds. Liggins knew or acted with reckless disregard to the fact that the funds being deposited in her bank account by Prime FX customers was for the purpose of trading Forex or Bitcoin.

26. Liggins created a DBA - Global Prime in order for Prime FX customers to more fully believe that Liggins operated a sub-fund to the larger Prime FX structure.

27. In December 2017, Prime FX Customer 11, a North Carolina resident, deposited $9,400 of his funds, via wire transfer, with the Liggins DBA Global Prime bank account. Liggins was the sole owner and controlled the Global Prime bank account.

28. Also, in December 2017, Prime FX Customer 12, a Canadian resident, wire transferred $2,000 into Liggins' DBA Global Prime bank account, Customer 12 emailed care@primefx.org after she sent the $2,000 wire to give notice of the deposit, and Customer 12

7

received an email back from care@primefx.org stating that the funds were credited successfully to her beginner account.

29. After the deposits of Customers 11 and 12 were received in the DBA Global Prime bank account, Liggins wired $4,000 to Customer 5. The payment to Customer 5 was purportedly commissions on customer referrals made by Customer 5.

30. By February 2018, the account was closed and the remaining $7,512 was withdrawn by Liggins. None of the funds in the DBA Global Prime account were used to trade Forex or Bitcoin.

### 5. V. Edeh's Misappropriations

31. During the Relevant Period, V. Edeh received deposits of $20,385 into one of his personal bank accounts from other defendants. The $20,385 was from Prime FX Customer funds first deposited into the bank accounts of other defendants and then transferred to V. Edeh. V. Edeh transferred a total of $5,162 from his personal bank account to three Prime FX Customers during the Relevant Period. The three Prime FX customers had deposited their investment funds with other Prime FX agents, not V. Edeh.

32. V. Edeh received a net total of $15,223 from Prime FX Customer funds after subtracting funds V. Edeh transferred to three Prime FX customers. V. Edeh did not use the $20,385 deposited into his personal bank account from other defendants to trade Forex or Bitcoin on behalf of Prime FX Customers during the Relevant Period.

## III. CONCLUSIONS OF LAW

### A. Jurisdiction and Venue

33. This Court has jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1345 (district courts have original jurisdiction over civil

actions commenced by the United States or by any agency expressly authorized to sue by act of Congress). This Court also has jurisdiction over Defendants Liggins and V. Edeh and the subject matter of this action pursuant to 7 U.S.C. § 13a-1(a), which authorizes the Commission to seek injunctive relief against any person whenever it shall appear that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order thereunder.

34. Venue properly lies with this Court pursuant to 7 U.S.C. § 13a-1(e) in that Defendants Liggins and V. Edeh are found in, inhabit, and/or transacted business in this district, and Defendants' acts and practices in violation of the Act have occurred, are occurring, and/or are about to occur within this district, among other places.

B.   **Fraud in Connection with Forex Contracts**

35. By misappropriating Prime FX Customer funds as described above, Liggins and V. Edeh cheated or defrauded or attempted to cheat or defraud and willfully deceived or attempted to deceive in connection with the offering of, or entering into, off-exchange leveraged or margined forex transactions, in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2018).

36. By failing to disclose, and omitting, that they were misappropriating Prime FX Customer funds, Liggins and V. Edeh made or attempted to make untrue or misleading statements of material fact or omitted to state or attempted to omit material facts necessary in order to make statements made not untrue or misleading, in connection with contracts of sale of commodities in interstate commerce, in violation of 7 U.S.C. § 9(1) (2018) and 17 C.F.R. § 180.1(a) (2020).

37. Unless restrained and enjoined by this Court, there is a reasonable likelihood that Liggins and V. Edeh will continue to engage in the acts and practices alleged in the Complaint

9

and in similar acts and practices in violation of the Act and Regulations.

## IV.   PERMANENT INJUNCTION

38.     Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, Liggins and V. Edeh are permanently restrained, enjoined and prohibited from directly or indirectly:

   a.   Cheating or defrauding, or attempting to cheat or defraud, or willfully deceiving or attempting to deceive, other persons in or in connection with any order to make, or the making of, any contract of sale of any commodity for future delivery that is made, or to be made, for or on behalf of, or with, any other person in violation of 7 U.S.C. § 6b(a)(2)(A) and (C) (2018); and

   b.   making or attempting to make untrue or misleading statements of material fact or omitting to state or attempting to omit material facts necessary in order to make statements made not untrue or misleading, in connection with contracts of sale of commodities in interstate commerce, in violation of 7 U.S.C. § 9(1) (2018) and 17 C.F.R. § 180.1(a) (2022).

39.     Liggins and V. Edeh are also permanently restrained, enjoined and prohibited from directly or indirectly:

   a.   Trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(40) of the Act, 7 U.S.C. § 1a(40) (2022);

   b.   Entering into any transactions involving "commodity interests" (as that term is defined in Regulation 1.3, 17 C.F.R. § 1.3 (2022), for their own personal account or for any account in which they have a direct or indirect interest;

   c.   Having any commodity interests traded on their behalf;

10

    d.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    e.    Soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    f.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2022); and,

    g.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2022), agent or any other officer or employee of any person (as that term is defined in 7 U.S.C. § 1a(38)) (2018), registered, exempted from registration or required to be registered with the Commission except as provided for in 17 C.F.R. § 4.14(a)(9) (2022).

## V.  RESTITUTION AND CIVIL MONETARY PENALTY

**A.  Restitution**

40.  Defendant Liggins shall pay restitution in the amount of two thousand four hundred dollars ($2,400) ("Restitution Obligation").  If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

41.  Defendant V. Edeh shall pay restitution in the amount of fifteen thousand two hundred and twenty-three dollars ($15,223).  If the Restitution Obligation is not paid

11

immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2018).

42. To effect payment of the Restitution Obligations and the distribution of any restitution payments to Prime FX Customers, the Court appoints the National Futures Association ("NFA") as Monitor ("Monitor"). The Monitor shall receive restitution payments from Liggins and V. Edeh and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

43. Liggins and V. Edeh shall make Restitution Obligation payments, and any post-judgment interest payments, under this Order to the Monitor in the name "Liggins – Restitution Fund," and "V. Edeh - Restitution Fund," respectively, and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Defendant and the name and docket number of this proceeding. Liggins and V. Edeh shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

44. The Monitor shall oversee the Restitution Obligations and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Prime FX Customers identified by the Commission or may defer distribution until such time as the

Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to Prime FX Customers is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part V.B below.

45. Liggins and V. Edeh shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify their customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Liggins and V. Edeh shall execute any documents necessary to release funds that they have in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligations.

46. The Monitor shall provide the Commission at the beginning of each calendar year with a report detailing the disbursement of funds to the customers of Liggins and V. Edeh during the previous year. The Monitor shall transmit this report under a cover letter that identifies the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

47. The amounts payable to each customer shall not limit the ability of any customer from proving that a greater amount is owed from Liggins or V. Edeh or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any customer that exist under state or common law.

48. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, each customer of

Liggins or V. Edeh who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution that has not been paid by Liggins or V. Edeh to ensure continued compliance with any provision of this Order and to hold them in contempt for any violations of any provision of this Order.

49. To the extent that any funds accrue to the U.S. Treasury for satisfaction of the Restitution Obligations of Liggins or V. Edeh, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

**B.  Civil Monetary Penalty**

50. Liggins shall pay a civil monetary penalty in the amount of four hundred twenty-nine thousand twenty-eight dollars ($429,028) ("Liggins CMP Obligation").  If the Liggins CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the Liggins CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

51. V. Edeh shall pay a civil monetary penalty in the amount of four hundred twenty-nine thousand twenty-eight dollars ($429,028) ("V. Edeh CMP Obligation").  If the V. Edeh CMP Obligation is not paid immediately, then post-judgment interest shall accrue on the V. Edeh CMP Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

52. Liggins and V. Edeh shall pay their CMP Obligations and any post-judgment interest, by electronic funds transfer, U.S. postal money order, certified check, bank cashier's

check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

> MMAC/ESC/AMK326
> Commodity Futures Trading Commission
> Division of Enforcement
> 6500 S. MacArthur Blvd.
> HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569 office
> (405) 954-1620 fax
> 9-AMC-AR-CFTC@faa.gov

53. If payment by electronic funds transfer is chosen, Liggins and V. Edeh shall contact Marie Thorne or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Liggins and V. Edeh shall accompany payment of their CMP Obligations with a cover letter that identifies the payor and the name and docket number of this proceeding. Liggins and V. Edeh shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

**C.    Provision Related to Monetary Sanctions**

54. Partial Satisfaction: Acceptance by the Commission/CFTC or the Monitor of any partial payment of the Restitution Obligations or the CMP Obligations shall not be deemed a waiver of their obligations to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

### VI.    MISCELLANEOUS PROVISIONS

55. Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

15

Notice to Commission:

        Rick Glaser, Deputy Director
        Commodity Futures Trading Commission
        Division of Enforcement
        1155 21st St., NW
        Washington, D.C. 20581

Notice to Defendant Liggins:

        504 SW 23rd Street, Apartment 11304
        Grand Prairie, TX 75051

Notice to Defendant V. Edeh:

        1161 Chimney Hill Way
        Gloucester, Ontario
        Canada
        KIT 8Z9

Notice to NFA:

        Daniel Driscoll, Executive Vice President, COO
        National Futures Association
        300 S. Riverside Plaza, Suite 1800
        Chicago, IL 60606-3447

56.    All such notices to the Commission or the NFA shall reference the name and docket number of this action.

57.    Change of Address/Phone: Until such time as Liggins and V. Edeh satisfy in full their Restitution Obligations and CMP Obligations as set forth in this Order, they shall provide written notice to the Commission by certified mail of any change to his telephone number and mailing address within ten calendar days of the change.

58.    Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

59.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action, including any motion by Defendants to modify or for relief from the terms of this Order.

60.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Liggins and V. Edeh, upon any person under the authority or control of any of them, and upon any person who receives actual notice of this Order, by personal service, e-mail, facsimile or otherwise insofar as he or she is acting in active concert or participation with Liggins or V. Edeh.

There being no just reason for delay, the Clerk of the Court is hereby ordered to enter this Order For Final Judgment By Default, Permanent Injunction, Civil Monetary Penalty, And Other Statutory And Equitable Relief Against Defendants Daniell N. Liggins And Victor O. Edeh forthwith and without further notice.

IT IS SO ORDERED on this **12** day of **June**, 2024.

*Richard G. Stearns*
UNITED STATES DISTRICT JUDGE